**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE**

**AT NASHVILLE**

| | | |
|---|---|---|
| **CEFERINO CRISOSTOMO LOPEZ,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-CV-01073** |
| | ) | |
| **SADDLER FUNERAL HOME AND** | ) | **JURY DEMANDED** |
| **CREMATORY SERVICES,** | ) | |
| **NELSON AND SONS MEMORIAL** | ) | |
| **CHAPEL, LLC, STEVE SADDLER, and** | ) | |
| **REID VAN NESS** | ) | |
| **Defendants.** | ) | |

---

### FIRST AMENDED COMPLAINT

---

Comes now Plaintiff, Ceferino Crisostomo Lopez, by and through counsel, and pursuant to Fed. R. Civ. Proc 15, hereby amend the original complaint in this matter and state as follows:

### INTRODUCTION

1. This lawsuit seeks redress for egregious abuses of basic human dignity and respect for the dead and their grieving family member (s). This lawsuit also alleges that the abuse of these fundamental principles of respect and dignity occurred because of a shockingly callous indifference to the rights and status of the Plaintiff and his deceased son because of their **race (Latinx)** and **national origin**.

2. Plaintiff has a cognizable legal interest in the deceased body of his son as his son's next of kin. Yet, the Defendants –out of maliciousness, ill will, callous indifference, recklessness and negligence – refused to deliver the body of Plaintiff's deceased son to the Plaintiff and other

1

family members for months on end. This caused extreme suffering to Plaintiff and other family members.

## JURISDICTION and VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the Plaintiff and the Defendants and the amount in controversy far exceeds the minimal requirement of $75,000.00.

4. This Court also has jurisdiction pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343, as this case involves an allegation of civil rights violations.

5. This Court also has jurisdiction under 28 U.S.C. § 1350, as Plaintiff is a non-U.S. citizen filing tort claims.

6. This Court has pendant jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

7. This Court is the proper venue pursuant to 28 U.S.C. §1391(a) because the Defendants reside in this district of Tennessee and because they all conduct business in Tennessee. A substantial part of Defendants' unlawful acts occurred in the purview of the Middle District.

## PARTIES

8. Plaintiff Ceferino Crisostomo Lopez (Plaintiff) is a resident of Comitancillo, Guatemala. He is the father and next of kin of the deceased Freddy Aroldo Crisostomo Hernandez.

9. Defendant Saddler Funeral Home and Crematory Services (Defendant Saddler) is a funeral home establishment located at 130 Trousdale Ferry Pike in Lebanon, Tennessee.

10. Defendant Steve Saddler (Defendant Saddler) is the operator of Saddler Funeral Home and Crematory Services and is a resident of Tennessee. Allegation below referencing "Defendant

2

Saddler" refer to both Defendant Steve Sadler and/or to Defendant Saddler Funeral Home and Crematory Services.

11. Defendant Nelson and Sons Memorial Chapel LLC (Defendant Nelson) is a funeral home establishment located in Shelbyville, Tennessee.

12. Defendant Reid Van Ness was a licensed embalmer and funeral director who provided services to both Saddler and Nelson funeral homes. Due in course to his actions and associations and work and combined efforts with the Defendant Funeral Homes, which were investigated by the State of Tennessee Board of Funeral Directors and Embalmers, Reid Van Ness voluntarily surrendered his license as a licensed funeral director and embalmer. He is a citizen of Tennessee.

## FACTUAL ALLEGATIONS

13. Freddy Aroldo Crisostomo Hernandez died in Robertson County on October 20, 2019, while protecting a female and minor child from assault by three men. Juan Carlos Alarcon (Mr. Alacorn), a friend of the Plaintiff and the deceased, went to the Davidson County morgue to view Freddy Aroldo Crisostomo's body.

14. Someone at the morgue recommended the embalming services and funeral director services of Reid Van Ness (Defendant Van Ness).

15. Mr. Alarcon, as agent and/or on behalf of the Plaintiff, entered into a contract with Defendant Van Ness, via a written contract on Defendant Saddler Funeral Home's letterhead, for embalming services and for the proper transportation of Freddy's body back to the Plaintiff and Plaintiff's family in Guatemala.

3

16. Mr. Alarcon paid Defendant Van Ness four thousand ($4,000.00.00) in cash on Plaintiff's behalf in October 2019 in order for Defendant (s) to properly handle and transport the remains of Freddy to Guatemala for Plaintiff.

17. Upon information and belief, based upon the statements of Defendant Van Ness, and based upon the statements of Defendant Nelson, Defendant Van Ness operated out of both Defendant Nelson's and Defendant Saddler's establishments and at times over the course of the six months following the above described agreement the deceased's body was withheld and/or stored at both Defendant Saddler's and Defendant Nelson's.

18. Mr. Alarcon, on behalf of the Plaintiff, attempted to contact Mr. Van Ness many times over a period of months to inquire about the shipping of Freddy's remains.

19. Twice, Mr. Alarcon was given false confirmation numbers for the transport via international air carriers. This false information was relied upon by Plaintiff and Plaintiff's family.

20. In December 2019, Plaintiff and several members of the family made the arduous journey from Comitancillo to Guatemala City, Guatemala, in hopes of receiving the remains of Freddy Aroldo Crisostomo's body.

21. Defendant Van Ness, Defendant Nelson, and Defendant Saddler failed to deliver Freddy's body in December 2019.

22. Mr. Alarcon, on behalf of Plaintiff, contacted Defendant Van Ness and asked about the body. They were told that there must have been a mistake and they would check on it.

23. Defendant Van Ness and/or other representatives of Defendant Saddler and Defendant Nelson told Mr. Alarcon that they would send Freddy's body in February 2020.

4

24. Plaintiff and several other members of the deceased's family, at considerable time and expense, traveled from Comitancillo to Guatemala City, Guatemala in February 2020 to receive Freddy's body.

25. Defendant Nelson, Defendant Van Ness, and Defendant Saddler failed to ship Freddy's body in February 2020.

26. At this point in February 2020, Mr. Alarcon and Plaintiff suspected that there may be a real problem and malfeasance on the part of the Defendant (s).

27. Defendant Nelson, Defendant Saddler, and Defendant Van Ness mishandled and neglected the body of Freddy for many months, in addition to other Latinx/Latino/Latina remains, and Mr. Alarcon made multiple attempts to contact Defendants and confirm proper shipment of Freddy's body.

28. Defendant Van Ness – through both Defendant Saddler and Defendant Nelson – kept Freddy's body more than six months in which the body began to decay and smell.

29. In March 2020, Mr. Alarcon on behalf of the Plaintiff sought professional assistance.

30. Mr. Alarcon enlisted the services of Attorney Eric K. Lockert to attempt to force Defendant Nelson, Defendant Saddler, and Defendant Van Ness to comply with their contractual, professional, moral, and fiduciary obligations and ship the remains of Freddy to the Plaintiff in Guatemala City, Guatemala..

31. On March 5, 2020, Attorney Eric Lockert, on behalf of Mr. Alarcon and the Plaintiff, contacted the Tennessee State Board of Funeral Directors, Embalmers, and Burial (State Board).

32. Upon reasonable information and belief Freddy's body was kept at both Defendant Saddler and Defendant Nelson's funeral establishments.

5

33. Freddy's body was ultimately located at Defendant Nelson's, and pursuant to legal involvement and relevant investigations was ultimately shipped from Defendant Nelson's back to Guatemala. Photographic evidence of the shipping container box indicated that Defendant Nelson's Funeral Home was the origin of the shipping as written on the cardboard transfer box to be placed on an airplane bound for Central America.

34. A subsequent investigation was conducted by the State Board. The investigation led to a finding that both Defendant Nelson and Defendant Saddler, in addition to numerous other violations, were found to have "utilized the services of a funeral director reasonably aware that the funeral director was in violation of board statutes and rules, failing to cooperate with an authorized representative, failure to affix identity tags, and misleading and deceptive practices". (**Exhibit A**)

35. The investigation by the State Board was initiated as a result of the tortious and despicable conduct perpetrated by Defendant Van Ness, Defendants Nelson, and Defendant Saddler with regard to the body of Freddy the deceased son of the Plaintiff.

36. The despicable practices and treatment of the deceased's body was unfortunately not unique, as a result of the State Board's investigation seven (7) bodies (one of which was the Plaintiff's son's remains were located at Defendant Nelson's establishment whose treatment warranted fines against the establishment funeral home, and eight (8) bodies were located at Defendant Saddler's establishment. Said treatment and condition as discovered by the State Board investigators resulted in warranted fines by the State Board against the respective establishment funeral homes.

37. Both Defendant Nelson and Defendant Saddler entered into consent orders with the State Board detailing the findings of fact and results of the investigation and the agreed upon fines and fees.

38. The above-described findings were presented at a virtual State Board hearing that took place on August 11, 2020.

39. Approximately eleven minutes and forty seconds into the August 11, 2020 recorded hearing State Board Associate General Counsel, Regulatory Boards Elizabeth Bendell details Defendant Nelson admitting that the body of Freddy Hernandez was being kept at Defendant Nelson's, and proceeds to detail the violations found pertaining to the body of Freddy Hernandez, along with the violations pertaining to other bodies.

40. As noted above these alleged violations were agreed to and fines were paid on behalf of both Defendants Nelson and Defendant Saddler. (**See Exhibit A**)

41. These egregious actions caused extreme emotional distress to Plaintiff and other family members.

42. Plaintiff expended considerable funds traveling from Comitancillo, Guatemala to Guatemala City, Guatemala on multiple occasions in order to receive their son's remains due to the false representations made by Defendant Van Ness coupled with the cooperation of Defendant Saddler and Defendant Nelson.

43. It was not until March 2020 that Freddy's body was finally transported to Guatemala after many attempts by legal counsel, Eric K. Lockert.

44. The Tennessee State Board of Funeral Directors and Embalmers found that both Defendant Saddler and Defendant Nelson committed numerous violations with regard to the storage of bodies and their remains at their establishments.

45. Both Defendant Saddler and Defendant Nelson knowingly had multiple bodies stored in their facilities improperly, and engaged with in business transactions and or utilized the services of Defendant Van Ness.

46. The Tennessee State Board of Funeral Directors and Embalmers determined that both Defendant Saddler and Defendant Nelson violated Tenn. Comp. R. & Regs. 0660-11-.05, which provides in pertinent part that "Members of the public shall be treated in a respectful manner."

47. The Tennessee State Board of Funeral Directors and Embalmers determined that both Defendant Saddler and Defendant Nelson violated Tennessee Code Annotated § 68-3-313.

48. The Tennessee State Board of Funeral Directors and Embalmers determined that both Defendant Saddler and Defendant Nelson violated Tenn. Comp. R. & Regs. 0660-11-.03, which provides:

> No funeral director, embalmer or establishment shall utilize the services of an independent contractor, trade embalmer, or any other outside provider if the funeral director, embalmer or establishment knows, or reasonably should know, that such independent contractor, trade embalmer, or other outside provider is in violation of any statute or rule pertaining to the Board.

49. The Tennessee State Board of Funeral Directors and Embalmers determined that both Defendant Saddler and Defendant Nelson violated Tenn. Comp. R. & Regs. 0660-11-.07 which provides in part:

(1) All records subject to inspection by Federal Trade Commission officials as provided in the Federal Rule shall be made available to the Board (or its authorized representatives) under the same terms.

(2) A licensee shall submit, upon request of the Board or the Board's designee, any records kept by the licensee in the normal course of business.

8

50. The Tennessee State Board of Funeral Directors and Embalmers determined that both Defendant Saddler and Defendant Nelson violated Tennessee Code Annotated. §62-5-317.

## FIRST CAUSE OF ACTION
### 42 U.S.C. §1981

51. Plaintiff hereby incorporate paragraphs one through fifty above as if recited verbatim herein.

52. Defendant Nelson, Defendant Saddler, and Defendant Van Ness intentionally and or recklessly engaged in unlawful and rank discrimination against Plaintiff and the remains of Plaintiff's deceased son's remains based on **race (Latinx)** and **national origin** in violation of 42 U.S.C. §1981. Specifically, Defendant Nelson and Defendant Sadler have discriminated against the Plaintiff and against the body of Plaintiffs' son on the basis of their Latinx ethnicity and race.

53. Such intentional discrimination on the basis of race and national origin resulted in the abject mistreatment of Plaintiff's son's body.

54. Such treatment was far worse than the far more favorable treatment that Defendant Saddler, Defendant Nelson, and Defendant Van Ness gave to similarly situated non-Hispanic bodies.

55. Plaintiff alleges a contractual and/or quasi-contractual relationship with Defendant Saddler, Defendant Van Ness, and with Defendant Nelson.

56. Defendant Nelson, Defendant Saddler, and Defendant Van Ness (1) intended to discriminate against the Plaintiff on the basis of his **race** and **national origin**, (2) the Defendant (s) discriminatory conduct abridged Plaintiff's rights under 42 U.S.C. § 1981, and (3) Plaintiff asserts that he belongs to an identifiable class (Latinx) that is subject to discrimination on the basis of his race.

57. Upon information and belief Defendant Saddler knew and/or was reasonably aware that Defendant Van Ness was preying upon a vulnerable community (including Plaintiff) on the

9

basis of **race**, and was complicit and/or willfully ignorant in the furthering of the aforementioned conduct.

58. Upon information and belief Defendant Nelson knew and/or was reasonably aware that Defendant Van Ness was preying upon a vulnerable community (including Plaintiff) on the basis of **race**, and was complicit and/or willfully ignorant in the furthering of the aforementioned conduct.

59. Upon information and belief, and based upon the statements of Defendant Van Ness, Defendant Sadler was complicit and/or willfully ignorant with regard to the mistreatment of the Plaintiff on the basis of his **race** and/or **national origin**.

60. Plaintiff's mistreatment at the hands of Defendant Saddler, Defendant Van Ness, and Defendant Nelson is not unique, but a pattern of discriminatory conduct and mistreatment with regard to the Latinx and/or Hispanic community.

61. One of the bodies located at Defendant Saddler's establishment as a result of the State Board's investigation was that of Bryan Ayala.

62. Bryan Ayala was a Latinx 17 year old that tragically took his own life by jumping into an Ohio river on May 21, 2019.

63. Bryan Ayala's mother, Maria Ayala, engaged Defendant Van Ness and Bryan Ayala's body landed at Defendant Saddler's funeral establishment where it was left to sit.

64. Approximately ten months passed before Bryan Ayala's body was eventually cremated, as a result of the State Board's investigation into the treatment and/or handling of the body of Freddy Hernandez by Defendant (s), and finally returned to his mother.

65. Defendant Van Ness was and is well known in the funeral establishment community, and both Defendant Saddler and Defendant Nelson were aware of Defendant Van Ness's relationships and dealings with the Hispanic and/or Latinx community.

66. Defendant Nelson has publicly admitted, by way of Albert Nelson, that the establishment engaged with Defendant Van Ness as early as 2019, and allowed Defendant Van Ness to operate out of and/or store bodies at Defendant Nelson's establishment[1].

67. Only after action taken by Plaintiff's legal counsel and the State Board did Defendant Nelson finally take action and ship at least seven (7) bodies (including the body of the Plaintiff's son) back to Honduras, Guatemala, and Mexico etc.

68. Defendant Nelson has been approached in the past by Francisca Castro, a volunteer with the Tennessee Immigrant and Refugee Rights Coalition, with regard to a distraught family attempting to have their loved one's body returned home to Mexico[2].

69. In that instance Francisca Castro was made aware that Defendant Nelson was working with Defendant Van Ness and storing the bodies of Latinx individuals at Defendant Nelson's establishment[3].

70. Upon information and reasonable belief Francisca Castro was informed that Defendant Nelson by way of Defendant Van Ness was storing bodies at Defendant Nelson's until such time as

---

[1] Guzman, T.D. and Wadhwani, A. (2021, February 21). *A Tennessee Funeral Director made promises to Immigrant Families; He didn't Deliver.* Tennessee Lookout. https://tennesseelookout.com/2021/02/11/a-tennessee-funeral-director-made-promises-to-immigrant-families-he-didnt-deliver/.

[2] Guzman, T.D. and Wadhwani, A. (2021, February 21). *A Tennessee Funeral Director made promises to Immigrant Families; He didn't Deliver.* Tennessee Lookout. https://tennesseelookout.com/2021/02/11/a-tennessee-funeral-director-made-promises-to-immigrant-families-he-didnt-deliver/.

[3] *Id.*

grieving families could raise funds, even though in at least some cases families had already paid Defendant Van Ness in full[4].

71. Defendant Van Ness, Defendant Nelson, and Defendant Saddler's actions in essentially holding bodies hostage until debts had been paid or more money was received is morally reprehensible and violates everything from basic duty of care to the all-important fiduciary duties placed upon such types of establishments in the State of Tennessee.

72. This particular family referenced in paragraph 71 above alleges to have paid Defendant Van Ness in full, and yet the body was never shipped and remained in storage at Defendant Nelson's establishment for an extended period of time.

73. Upon reasonable information and belief, and based upon the statements of Defendant Van Ness, Defendant Saddler engaged in the concealment of at least one (1) body at the time of the State Board investigation conducted in March of 2020 and never disclosed that information to the State Board during their investigation.

74. Upon reasonable information and belief, and based upon the statements of Defendant Van Ness, Defendant Nelson engaged in similar conduct/behavior with regard to the body of Ana Avila Alvarez.

75. Upon reasonable information and belief Ana Avila Alvarez was a member of the Latinx community and her remains were treated with the same cold, harsh and appalling indifference as the remains of Plaintiff's son's remains.

76. Defendant Van Ness, Defendant Nelson, and Defendant Saddler have each engaged in conduct which they would have otherwise not engaged in based on the **race** and **national origin**, and

---

[4] *Id.*

**Latinx** ethnic background of the Plaintiff, Plaintiff's son, and engaged in such conduct with regard to other families and deceased's remains in similar situations.

77. Defendant Nelson, Defendant Van Ness, and Defendant Saddler engaged in this above described insidious conduct based upon the belief and unfortunate reality that the **Latinx** and/or immigrant community is often underrepresented, and treated disproportionally in society.

**SECOND CAUSE OF ACTION**

**42 U.S.C. §1985**

78. Plaintiff hereby incorporates paragraphs one through seventy-seven above as if recited verbatim herein.

79. Defendant Reid Van Ness conspired with Defendants Saddler Funeral Home and Crematory Services/Defendant Steve Saddler and Defendant Nelson and Sons Memorial Chapel LLC to deprive Plaintiff of his civil rights while engaging in unlawful and rank discrimination based on race and national origin.

80. Defendant Nelson, Defendant Saddler, and Defendant Van Ness collectively conspired to deprive Plaintiff of equal protection of the laws.

81. Defendants' collusion and conspiracy were fundamental to the conduct and continuance of the fraud perpetrated on the Plaintiff regarding the mistreatment of his son's body and the subsequent cover-up which deprived Plaintiff of his right to inter his son with dignity.

82. Based on the foregoing Plaintiff alleges (1) a conspiracy between the Defendants in general, a conspiracy between Defendant Nelson and Defendant Van Ness, and a conspiracy between Defendant Saddler and Defendant Van Ness, (2) this conspiracy was carried out for the purpose of depriving directly and/or indirectly Plaintiff (based on their membership to specific class of persons, the **Latinx** community) of equal privileges under the law, (3) that Defendant Nelson,

13

Defendant Van Ness, and Defendant Saddler have engaged in actions in furtherance of said conspiracy, (4) and that Plaintiff has been injured and deprived of his right (s).

### THIRD CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

83. Plaintiff hereby incorporates paragraphs one through eighty-two above as if recited verbatim herein.

84. Defendants Nelson, Sadler, and Van Ness engaged in intentional and reckless conduct in the mishandling of Plaintiff's son's body and the failure to ensure the timely transportation of Plaintiff's son's body for a period of at least six (6) months.

85. Defendants Saddler, Nelson, and Van Ness intentionally or recklessly withheld the deceased's remains.

86. The actions of Defendants Saddler, Nelson, and Van Ness were extreme and outrageous.

87. The extreme and outrageous actions of Defendants Saddler, Nelson, and Van Ness actually and proximately caused Plaintiff to suffer severe emotional distress.

88. The actions of Defendants Saddler, Nelson, and Van Ness with regard to the withholding, inhumane, and tortious treatment of Plaintiff's son's remains resulted in negligent, reckless and/or intentional infliction of emotional distress in the following ways, including but not limited to;

    a. Unnecessary decomposition of Plaintiff's body

    b. Plaintiffs' son's remains being withheld from his loving family for approx. seven (7) months

c. An inability on the behalf of Plaintiff and family to properly bury and/or inter Plaintiff's son's remains

d. The extreme emotional toll with regard to the obvious assessment that Plaintiff's son's remains were not treated with the proper respect and care due.

e. Plaintiff's daily life has been affected with the emotional trauma that is a result of the despicable treatment with regard to his son's remains

89. Defendant Nelson's conduct with regard to the Plaintiff's son's remains and other members of the **Latinx** community is so outrageous that it should not be tolerated by civilized society.

90. Defendant Saddler's conduct with regard to the Plaintiff's son's remains and other members of the **Latinx** community is so outrageous that it should not be tolerated by civilized society.

91. Defendant Van Ness's conduct with regard to the Plaintiff's son's remains and other members of the **Latinx** community is so outrageous that it should not be tolerated by civilized society.

92. Defendant Nelson, Defendant Van Ness, and Defendant Saddler each engaged in tortious conduct that resulted in serious mental injury to the Plaintiff.

93. For approx. seven (7) months the Plaintiffs suffered extreme and severe emotional distress not knowing where or how his son's remains were being treated.

94. The Plaintiff's extreme and severe emotional distress continues and will likely continue for the remainder of his life due to the conduct of Defendant Nelson, Defendant Van Ness, and Defendant Saddler.

## FOURTH CAUSE OF ACTION

### Breach of Contract/Breach of Implied Contract in Fact

95. Plaintiff hereby incorporates paragraphs one through ninety-four above as if recited verbatim herein.

96. The Plaintiff was the clearly intended beneficiary of a written and oral contract between Defendant Saddler and/or Defendant Van Ness and Mr. Alarcon.

97. Mr. Alarcon on the Plaintiff's behalf paid in full for the services of Defendant Saddler and Defendant Van Ness to perform embalming services and to transport Freddy's body to his family.

98. Defendant Nelson, by way of a conspiracy between the Defendants, by way of a pattern of working with Defendant Van Ness and Defendant Saddler with regard to the care and treatment of Latinx and or Hispanic remains, and by way of directly engaging with and/or storing and/or mishandling Plaintiff's son's remains made itself a party to the contract.

99. Defendant Nelson, through its own actions, took on professional, fiduciary, and a basic moral duty and/or obligation to the Plaintiff and Plaintiff's son's remains.

100. The Defendants failed to deliver their end of the bargain and timely deliver Freddy's body to Plaintiff and his family.

101. As a result of Defendants' breach of contract, Plaintiff has suffered damages, including transportation expenses from their home city in Guatemala to the airport where the body was supposed to be delivered on multiple occasions.

102. Defendant Nelson and Defendant Saddler, as active and continuous operators of funeral/burial/end of life services in the state of Tennessee have directly or impliedly covenanted to provided appropriate and dignified services to the Plaintiff and to the Plaintiff's son's remains.

103.    Defendant Nelson, Defendant Van Ness, and Defendant Saddler both together and individually grossly breached said covenant.

## FIFTH CAUSE OF ACTION

### Tennessee Consumer Protection Act

104.    Plaintiff hereby incorporates paragraphs one through one hundred and three above as if recited verbatim herein.

105.    Defendants Saddler, Nelson, and Van Ness engaged in fraudulent and deceptive acts in violation of the Tennessee Consumer Protection Act, codified at Tenn. Code Ann. §47-18-101 et seq.

106.    The Defendants Saddler, Nelson, and Van Ness fraudulently and deceptively represented their services to properly handle and return the body of the Plaintiff's son to the family while not only failing to do so but also continuing to falsely represent their actions and covering up their failures to ship the remains of Plaintiff's son.

107.    The Defendants' fraudulent and deceptive acts were knowing and willful so as to trigger the protections afforded victimized persons like Plaintiffs under Tenn. Code Ann. §47-18-109.

108.     The Defendants' fraudulent actions exhibited an ongoing and patent disregard for the truth while perpetrating a gross injustice which was only remediated by governmental intervention. Defendant Van Ness has opined that Defendant Saddler and Defendant Nelson were aware of what was going on and referred to his actions as "robbing Peter to pay Paul".

## SIXTH CAUSE OF ACTION

### Breach of Fiduciary Duty

109.    Plaintiff hereby incorporates paragraphs one through one hundred and eight above as if recited verbatim herein.

110. Defendant Saddler, Defendant Nelson, and Defendant Van Ness offered funeral-related services that Mr. Alarcon and Plaintiff as the intended beneficiary reasonably expected would be performed in a dignified and respectful manner.

111. Plaintiff placed special trust in the supposed expertise of Defendant Van Ness, Defendant Nelson, and Defendant Saddler.

112. Defendant Saddler, Defendant Nelson, and Defendant Van Ness owed a special duty to Plaintiff to fully and faithfully perform their duties.

113. Defendant Nelson, Defendant Van Ness, and Defendant Saddler's conduct in breaching their fiduciary obligations was intentional, knowing and reckless.

114. As outlined in the many factual allegations set forth previously above, Defendants Saddler and Nelson actively engaged with and worked with Defendant Van Ness in the preparation, storage, and shipping with regard to the remains of loved ones' from the Latinx and/or Hispanic and/or Latino community.

115. Defendant Nelson as a funeral home establishment in the state of Tennessee undertook to provide appropriate and dignified services and/or treatment with respect to the Plaintiff's son's remains.

116. Defendant Saddler as a funeral home establishment in the state of Tennessee undertook to provide appropriate and dignified services and/or treatment with respect to the Plaintiff's son's remains.

117. Instead, Defendants Saddler and Nelson, by way of Defendant Van Ness, have desecrated the sacred fiduciary relationship they entered into with Plaintiff and with the Latinx community.

118.   Defendant Saddler exercised dominion and influence over the remains of Plaintiff's deceased son, and Defendant Nelson exercised dominion and influence over the remains of Plaintiff's deceased son.

119.   Defendant Van Ness exercised dominion and influence over the remains of the Plaintiff's deceased son.

120.   Defendant Nelson through Defendant Nelson's actions assumed a duty to the close relatives of the decedent Freddy Hernandez.

121.   Defendant Nelson grossly breached that fiduciary duty.

122.   Defendant Saddler through Defendant Saddler's actions assumed a duty to the close relatives of the decedent Freddy Hernandez.

123.   Defendant Saddler grossly breached that fiduciary duty.

124.   Defendant Van Ness grossly breached that fiduciary duty.

## SEVENTH CAUSE OF ACTION

### Intentional Misrepresentation

125.   Plaintiff hereby incorporates paragraphs one through one hundred and twenty-four above as if recited verbatim herein.

126.   The Defendants Nelson, Van Ness, and Saddler engaged in intentional misrepresentation through their fraudulent conduct and deceitful actions with regard to the handling of Freddy's body and the transportation of Freddy's body to Guatemala.

127.   Defendants Van Ness, Nelson, and Saddler promised that they would provide embalming and ensure the delivery of Freddy's body to Plaintiff in Guatemala.

128.   Plaintiff reasonably relied to his detriment on the false representations by Defendants.

129.   Plaintiff have suffered damages as a result of the Defendants' fraud.

130.    The State Board, as a result of the investigation into both Defendant Saddler and Defendant Nelson, alleged in the August 11, 2020 meeting that both Defendants Saddler and Nelson had engaged in deceptive practices.

131.    Defendants Van Ness, Nelson, and Saddler (Defendants Saddler and Nelson through Defendant Van Ness and additionally by way of their individual actions) have engaged in intentional misrepresentation per the following;

      a. The Defendants made a representation to Plaintiff and/or Mr. Alacorn of a present or past fact with regard to the Plaintiff's son's body

      b. Defendants' representation (s) was false

      c. The representation involved a material fact

      d. The Defendants made said representation either knowing it was false, not believing it to be true, or recklessly without knowing it was false

      e. The Plaintiff did not know said representation was false when it was made

      f. The Plaintiff sustained damages as a result of the representation

### EIGHTH CAUSE OF ACTION

#### Negligence

132.    Plaintiff hereby incorporates paragraphs one through one hundred and thirty-one above as if recited verbatim herein.

133.    At the very least, Defendant Saddler, Defendant Nelson, and Defendant Van Ness were negligent and/or reckless in failing to properly take care of the remains of Freddy and send those remains to Plaintiff in a timely fashion.

134.    Defendant Nelson, Defendant Saddler, and Defendant Van Ness owed a duty of care to Plaintiff as the next surviving of kin of Freddy and as the intended beneficiary of said funeral/human remains services and care.

20

135. Defendant Nelson, Defendant Saddler, and Defendant Van Ness breached their duty of care to the Plaintiff by failing to abide by applicable Tennessee statutes and regulations regarding the handling of remains, and by grossly falling below the applicable standard of care.

136. The Defendants collectively and individually breached their duty of care and, in fact, were negligent per se by violating numerous Tennessee statutes and regulations related to the handling of remains as found by the Tennessee State Board of Funeral Directors and Embalmers.

137. Defendant Saddler, Defendant Nelson, and Defendant Van Ness's actions or lack thereof are the cause in fact of the Plaintiff's injuries.

138. Defendant Saddler, Defendant Nelson, and Defendant Van Ness's actions are the proximate and/or legal cause of the Plaintiff's injuries.

139. Defendants' gross acts of negligence actually and proximately caused harm and damages to Plaintiff.

## NINTH CAUSE OF ACTION

### Mishandling of Remains/Interference with Dead Bodies

140. Plaintiff hereby incorporates paragraphs one through one hundred and thirty-nine above as if recited verbatim herein.

141. Defendant Van Ness, Defendant Nelson, and Defendant Saddler all failed to properly take care of Freddy's remains and instead left them lying around their establishments for months on end.

142. Defendants collectively and individually did not adequately take care of Freddy's remains and failed to ship them to Plaintiff.

143. Defendants' willful and wanton indifference to the remains of Freddy constitutes the mishandling of remains.

21

144.    Defendants negligently, recklessly, and/or intentionally interfered with Freddy's remains. Defendants withheld and prevented the proper internment of Freddy's body.

145.    The Defendants' actions were the direct and proximate cause of this interference and caused the Plaintiff and Plaintiff's family to suffer serious and substantial harm.

146.    Defendant Nelson, Defendant Saddler, and Defendant Van Ness's actions are a textbook violation and textbook tortious conduct as it relates to Section 868 of the Restatement (Second) of Torts.

147.    Defendant Nelson, Defendant Van Ness, and Defendant Saddler intentionally, and/or recklessly, and/or negligently removed, withheld, and or prevented the proper internment and/or cremation of Plaintiff's son's remains.

148.    Per Tennessee law, precedent, and the Restatement (Second) of Torts Plaintiff as next of kin has a cause of action as the Defendants' actions (intentional, and/or reckless, and/or negligent mistreatment of Freddy's body that prevented internment or cremation) grossly and substantially interfered with the Plaintiff's exclusive right of control over his son Freddy's remains.


**PRAYER FOR RELIEF**


The Plaintiff requests the following:

(a)  A trial by jury;

(b) An award of compensatory damages jointly and severally against the Defendants Nelson, Sadler, and Van Ness in an amount not less than $3,000,000.00;

(c) An award of punitive damages, jointly and severally against the Defendants, in an amount not less than $5,000,000.00;

(d) Treble damages for violation of the Tennessee Consumer Protection Act, Tenn.

Code Ann. §47-18-109.

(e) An award of prejudgment and post judgment interest;

(f) Attorney fees and costs as provided for under 42 U.S.C. §1988.

(g) Any other and further relief to which Plaintiffs may be entitled at law or equity.

Respectfully Submitted,

/s/ *John H. Morris*
JOHN H. MORRIS
BPR # 35789
Nashville Vanguard Law, PLLC
Parkway Towers, Suite 102
404 James Robertson Parkway
Nashville, TN   37219
John.Morris@nashvillevanguardlaw.com
Phone: (615) 229-5529
Fax: (615) 679-9520
*Attorney for Plaintiffs*

/s/ *Andrew S. Lockert*
Andrew S. Lockert
BPR #36606
Lockert Law PLLC
112 Frey Street
Ashland City, TN  37015
Phone: 865-776-0623
Fax: 615-792-4867
andrew@lockertlaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 1st day of April 2021, a true and correct copy of the foregoing has filed with the Court ECF system and has been forwarded to:

Andrew Grams
Christen C. Blackburn
Lewis Thomason, P.C.
424 Church Street, Suite 2500
P.O. Box 198615
Nashville, TN 37219

Reid Van Ness
520 Walton Lane, Unit J46
Madison, TN 37155

Jason A. Lee
Ally D. Hargett
Burrow Lee, PLLC
611 Commerce Street, Suite 2603
Nashville, TN 37203

/s/ *John H. Morris*
JOHN H. MORRIS